IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02329-EWN-KLM

DANIEL AGUILAR,

    Plaintiff(s),

v.

DEPUTY SEDILLO,
DEPUTY TITUS, and
DEPUTY POOLE,

    Defendant(s).

_____

**AMENDED RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court pursuant to Defendants Sedillo and Titus's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. § 1997e [Docket No. 37; Filed May 9, 2007] (the "Motion"). Plaintiff filed a response on May 25, 2007 [Docket No. 47], and Defendants Sedillo and Titus filed a reply on June 6, 2007 [Docket No. 49].[1] On July 3, 2007, Plaintiff also filed what appears to be a surreply [Docket No. 51].[2] After the Motion was fully briefed, the Court concluded that an evidentiary hearing was necessary on the issue of whether Plaintiff exhausted his administrative remedies [Docket No. 59]. The Court conducted the hearing on February

---

[1] Unless otherwise indicated, the Court hereinafter uses the term "Defendants" to refer to Defendants Sedillo and Titus.

[2] The Court notes that surreplies are not contemplated by the Federal or Local Rules governing motions. In addition, the surreply here was filed nearly one month after Defendant's reply. While the Court is not obligated to consider the arguments asserted by Plaintiff in his surreply, it elects to do so in the interest of justice.

19, 2008 [Docket No. 61].

Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1.C, the Motion has been referred to this Court for recommendation. Having considered the pleadings and the evidence and testimony presented at the hearing, the Court recommends that the Motion be **granted**.

## I. Factual Background

At the time of the alleged incident, Plaintiff was a pretrial detainee at the Adams County Detention Facility relating to a State of Colorado offense.[3] Amended Complaint at 3 [Docket No. 13]. Plaintiff claims that on some date between June 15, 2005 and July 23, 2005, the exact date being unknown to Plaintiff, Adams County deputies took Plaintiff from his cell, placed him in a restraint chair, and restrained his arms behind his back. *Id.* They also placed a mask over his head and forced him into a "quiet room." *Id.* Plaintiff alleges that the conduct of these deputies left him irreparably injured and without the full use of his shoulders and left hand. *Id.*

Plaintiff did not grieve this alleged injury at the time it occurred. Rather, Plaintiff claims he filed a grievance for his alleged injuries with the Adams County Detention Facility on June 28, 2006, when he was at the facility for a Court appearance. Surreply at 1 [Docket No. 51]. At the evidentiary hearing, Plaintiff further explained to the Court that

---

[3] Defendants indicate that Plaintiff was incarcerated at the Adams County Detention Facility from June 13, 2005 to March 8, 2006. Motion at 3 [Docket No. 37]. They also indicate that he returned to the facility for seven days in June 2006. Reply at 4 n.3 [Docket No. 49]. At the evidentiary hearing, Plaintiff testified that immediately prior to his return to the facility in June 2006, and immediately thereafter, he was incarcerated by the Colorado Department of Corrections. Plaintiff has now been paroled [Docket No. 58].

2

he intended to file a civil complaint against Defendants relating to the restraint chair incident, but was informed that he needed to properly grieve his injuries against them before he could do so. As such, Plaintiff claims that he took the opportunity to file the grievance for the injury complained of in his Amended Complaint when he returned to the Adams County Detention Facility in June 2006.

## II. The Complaint and Motion

Well more than one year after the alleged incident and approximately five months after allegedly filing his grievance, Plaintiff filed a Complaint with supporting exhibits which is the subject of the pending action [Docket No. 3; November 20, 2006 ]. By Court Order of February 5, 2007, Plaintiff was directed to file an Amended Complaint that complied with the pleading requirements of Fed. R. Civ. P. 8 [Docket No. 11]. Plaintiff filed a Amended Complaint on March 2, 2007 [Docket No. 13] alleging that Defendants were guilty of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the U.S. Constitution.[4] Plaintiff seeks compensatory damages in the amount of $500,000.00 from each Defendant, and punitive damages in the amount of $150,000.00 from each Defendant. He also seeks medical costs and the costs of litigating his Amended Complaint. The named Defendants are Deputy Sedillo, Deputy Titus, and Deputy Poole.

Defendants Sedillo and Titus were served with the Amended Complaint and filed

---

[4] Plaintiff attached to his original Complaint more than ten grievance forms he purported to have filed with the Adams County Detention Facility between June 2005 and June 2006 [Docket No 3, at 11-29]. While he did not re-attach these exhibits to his Amended Complaint or serve them on Defendants, the Court takes judicial notice of them herein.

3

a Motion to Dismiss on May 9, 2007 [Docket No. 37]. They allege that dismissal is appropriate because Plaintiff failed to exhaust his administrative remedies and, consequently, has failed to state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1997e and Fed. R. Civ. P. 12(b)(6).[5]

III. Analysis

A. Standard of Review

In support of the Motion to Dismiss, Defendants attach an affidavit of an employee from the Adams County Detention Facility where Plaintiff was incarcerated at the time of the alleged injury [Docket No. 37-2, Exhibit A] and the facility's administrative grievance policy [Docket No. 37-3, Exhibit B]. In their reply, Defendants attach a second affidavit from the prison employee [Docket No. 49-3, Exhibit B]. In addition, the Court conducted an evidentiary hearing where additional documents not a part of the Amended Complaint were presented.

Generally, when matters outside the pleadings are presented, the motion must be

---

[5] Defendant Poole has never been served with the Amended Complaint. The summons was returned unexecuted as to Defendant Poole [Docket No. 40], indicating that he was "no longer employed by Adams County" [Docket No. 40]. Plaintiff acknowledges in his surreply that he "tried to serve Deputy Poole but has limited resources." Surreply at 1 [Docket No. 51]. On December 21, 2007, the Court issued an Order to Show Cause why Plaintiff's case against Defendant Poole should not be dismissed [Docket No. 60]. The Court instructed Plaintiff to serve Defendant Poole or show cause why he could not do so by January 18, 2008. Plaintiff did not respond. At the evidentiary hearing, Plaintiff acknowledged that Defendant Poole has not been served and offered as his sole justification for the failure to serve Defendant Poole that the Adams County Detention Facility refused to provide Plaintiff with a forwarding address for Defendant Poole. Plaintiff has failed to offer good cause why his case should not be dismissed as to Defendant Poole. As such, in conjunction with this Recommendation, the Court recommends that Plaintiff's case against Defendant Poole be dismissed pursuant to Fed. R. Civ. P. 4(m).

4

converted to one for summary judgment and reviewed under that standard. *Alvarado v. KOP-TV, LLC*, 493 F.3d 1210, 1215-16 (10th Cir.2007). "However, notwithstanding the usual rule . . ., 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* at 1215 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). Here, while the affidavits and documents submitted by Defendants in their Motion and at the evidentiary hearing are central to Plaintiff's claim, Plaintiff refutes their veracity. In such a situation, the Court analyzes the Motion to Dismiss pursuant to the standards set forth for resolving motions for summary judgment.[6]

Summary judgment is proper when the record before the court "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of evidence to support the nonmovant's case. If this burden is satisfied, the burden shifts to the nonmovant to show the existence of a genuine dispute of a material issue. The nonmoving party must go beyond the facts in its pleading and provide "specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S.317, 324 (1986). A fact is genuine if it could lead the trier of fact to find in favor of the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). The

---

[6] In addition, both parties were given an opportunity to present evidence in support of their position at the evidentiary hearing. Importantly, Plaintiff testified under oath and offered documentary evidence regarding his alleged submission of an administrative grievance. As such, the Court finds that the parties were provided with notice that the Court would consider the Motion pursuant to the standards set forth for reviewing summary judgment motions. *See Mason v. Yates*, No. CIV-05-1383-HE, 2006 WL 2662844, at *5 (W.D. Okla. Sept. 14, 2006) (unpublished decision).

factual record and the inferences it leads to shall be viewed in the light most favorable to the nonmoving party. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citation omitted).

Finally, Plaintiff is proceeding *pro se*. As such, the Court should construe his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court is not the nonmoving party's advocate and must nevertheless recommend dismissal of Plaintiff's case where he does not satisfy his burden. *See Hall*, 935 F.3d at 1110.

B. Exhaustion of Plaintiff's Claim

The key issue here is whether Plaintiff exhausted his administrative remedies as to the restraint chair incident and the injuries he alleges he suffered as a result. The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires that a claim regarding prison conditions must first be exhausted at the facility level before a prisoner may challenge those conditions via federal complaint. Specifically, the exhaustion provision states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Defendants argue that Plaintiff failed to exhaust his administrative remedies such that he is barred from bringing this suit pursuant to the PLRA. "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910, 918-19 (2007); *Woodford v. Ngo*,

6

548 U.S. 81, ___, 126 S. Ct. 2378, 2382 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). However, the burden is not on the Plaintiff to sufficiently plead exhaustion or attach exhibits proving exhaustion. *Jones*, 127 S. Ct. at 921. Rather, the burden is on Defendants to assert a failure to exhaust in their dispositive motion. The failure to exhaust defense is generally viewed as an allegation that the complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), see *id.* at 920-21, but the Court analyzes the issue here pursuant to Fed. R. Civ. P. 56. As such, if the evidence presented does not create a genuine issue in Plaintiff's favor as to whether the claim was properly exhausted, the Amended Complaint *must* be dismissed.

As a preliminary matter, the facility is tasked with the responsibility of establishing grievance procedures. *Id.* at 923 ("[I]t is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion."). "Compliance with prison grievance procedures, therefore, is all that is required by PLRA to 'properly exhaust.'" *Baldauf v. Garoutte*, No. 03-cv-01104-REB-CBS, 2007 WL 2697445, at *4 (D. Colo. Sept. 11, 2007) (unpublished decision) (citation omitted). Here, the grievance procedures and methods for tracking filed grievances of the Adams County Detention Facility were described in the affidavits of Melanie Gregory, the Technical Services Manager at the facility [Docket Nos. 37-2, 49-3]. Ms. Gregory further described those procedures in her testimony.

Pursuant to the Inmate Handbook in effect at the Adams County Detention Facility, inmates may grieve any alleged injuries by filing a form known as a "kite" with the module deputy. An adverse decision can be appealed to the Supervisor, and then to the Platoon Lieutenant or Technical Services Manager [Docket No. 37-3, at 4]. As the Technical

7

Services Manager, Ms. Gregory also serves as the custodian of records. In preparation for filing her affidavit, she reviewed Plaintiff's file, including all of the kites contained therein, and did not locate a kite describing the June/July 2005 restraint chair incident at issue in the Amended Complaint [Docket No. 37-2 at 1]. At the evidentiary hearing, Ms. Gregory testified that the facility also keeps a grievance log on which a facility employee records grievances that are submitted to a deputy. She further testified that a member of her staff searched the grievance log file and that there was no grievance log entry for the alleged restraint chair incident.

Plaintiff attached more than ten kites to his original Complaint [Docket No. 3, at 11-29]. The final kite he submitted with his Complaint is the document at issue in this matter. The kite is dated June 28, 2006 ("June 2006 kite"). The substance of that kite is reproduced below:

> I am grieving Deputy Poole for singleing [sic] me out for cruel & unusual punishment. I was locked in my cell from 7-5-05 until 7-10-05 and asked to play dead. I was also put into a restraining chair with a mask on and placed into a quite [sic] room for merely pushing my medical alert button. I turned a prisoner complaint packet into Deputy # 307. It was returned, only for Deputy's Titus & Sedillo to steal back from my friend Daniel Martinez DOC # 128508. I am unclear how to procede [sic] further in the grieving process. May I speak to a high-ranking deputy about this or an officer.
>
> Thank you for your consideration.

[Docket No. 3, at 28-29]; Plaintiff's Exhibit 1.[7]

Defendants contend that Plaintiff did not file the June 2006 kite with the Adams

---

[7] Although the June 2006 kite also grieves an alleged theft of Plaintiff's documents, this purported action does not form the basis of a claim for relief in Plaintiff's Amended Complaint.

8

County Detention Facility. Motion at 3 [Docket No. 37]. Plaintiff filed both a response and a surreply to the Motion to Dismiss. In his response, Plaintiff certifies that he "clearly filed a grievance with Adams County on 6-28-06. Plaintiff provided this Honorable Court with this grievance." Response at 1 [Docket No. 47]. In his surreply, Plaintiff states that he "did file grievance and is not surprised that kite has been lost or misplaced." Surreply at 1 [Docket No. 51]. Plaintiff also "swears under penalty of perjury he did submit kite to deputy on that date. Plaintiff was there for a court appearance." *Id.* In addition, at the evidentiary hearing, Plaintiff testified that he handed the June 2006 kite to a deputy, but he could not remember the name of the deputy.

Defendants refute Plaintiff's testimony and point to several inconsistencies between the alleged June 2006 kite and the other kites submitted by Plaintiff or contained in his inmate file. First, Ms. Gregory testified that when an inmate submits a kite, the module deputy signs the top of the form and indicates an intake date. The June 2006 kite does not contain a deputy's signature or other indication that it was received by a deputy or the date of such receipt.[8]

Second, Ms. Gregory explained that after a kite is reviewed, the deputy provides a response on the kite itself. The June 2006 kite contains no response. This is in direct contrast to the ten other kites attached to Plaintiff's original Complaint, all of which contain a response from a deputy [Docket No. 3, at 11-27]. At the evidentiary hearing, Plaintiff

---

[8] The Court notes that the overwhelming majority of kites contained in Plaintiff's inmate file have a deputy intake signature and date. *See* Defendants' Exhibit A. However, there are several kites not at issue here which do not contain this information. As such, the fact that the June 2006 kite does not contain a deputy intake signature or date is persuasive, but not dispositive to the Court.

9

acknowledged that the June 2006 kite did not contain a response. Moreover, he noted that he received a response to every other kite he filed at the facility, usually within a week of the date he filed it.

Third, Defendants noted at the hearing that during Plaintiff's nine-month stay at the facility from 2005 to 2006, Plaintiff filed numerous grievance requests. Indeed, not including the grievance in dispute, Plaintiff attached ten grievances that he filed ranging from June 30, 2005 to February 5, 2006 [Docket No. 3, at 11-16, 21-29]. Plaintiff also attached two administrative appeals that he filed while at the facility. *Id.* at 17-20. Defendants contend that Plaintiff was well aware of the facility's grievance process and exhaustion requirements. At the evidentiary hearing, Ms. Gregory testified that Plaintiff actually filed between sixty and seventy kites while he was incarcerated at the facility.[9]

Finally, Ms. Gregory testified that the facility's grievance filing system has been in place for the entire sixteen-year period she has been employed at the facility. She testified that it would be extremely rare to lose a grievance, and she has never heard of a similar complaint regarding any other grievance. Further, she noted that given her experience, she is confident that if the June 2006 kite had been properly submitted, it would be contained either in Plaintiff's inmate file or the grievance log file.

Defendants contend that considering all of the evidence, Plaintiff is unable to

---

[9] The Court notes that many of the kites filed by Plaintiff were filed close in time to the alleged injury referenced therein. *See* Defendant's Exhibit A. In an attempt to explain the year-long delay between the alleged restraint chair incident and the June 2006 kite, Plaintiff testified that he did not fully understand the need to file administrative grievances. Given his record of filing such grievances, the Court finds that this testimony lacks credibility.

establish that he adequately grieved the alleged restraint chair incident. Given the pleadings and the testimony and evidence presented at the evidentiary hearing, the Court agrees that Plaintiff has failed show that there is a genuine dispute about whether he properly submitted a grievance relating to the restraint chair incident alleged in his Amended Complaint.

Even were the Court to find that Plaintiff filed the June 2006 kite or that a genuine issue of fact exists regarding its filing, there is no dispute that the grievance was not exhausted because Plaintiff did not follow the facility's grievance policy and complete the necessary grievance steps. Although, the Adams County Detention Facility grievance policy provides little guidance regarding how a grievance is to be submitted, it does provide:

> If you have an issue that you cannot resolve routinely, you may write a grievance. The module deputy will hear the grievance first. If the module deputy cannot resolve the issue, the grievance will go to a Supervisor. The final step for a grievance is a Platoon Lieutenant or the Technical Services Manager.

[Docket No. 37-3 at 4].

As stated in the policy, the facility utilizes a three-step grievance process before an issue is considered exhausted. Here, Plaintiff does not contend that he received a response from the facility for the June 2006 kite, or that he appealed such response to a supervisor and then to the Platoon Lieutenant or Technical Services Manager. His sole assertion is that he submitted the grievance. Although not briefed by Defendants, the Tenth Circuit has found that an inmate must appeal his grievance through all available channels to fully exhaust his alleged injuries. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032

11

(10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."). While there is a recognized exception to the requirement to exhaust when procedures are not available – e.g, when an inmate has been prevented from filing a grievance or the facility refused to answer a grievance – the circumstances in this case do not appear to fall within that exception. *See id.*

In the present case, evidence was presented at the hearing that Plaintiff was well-versed in the facility's grievance procedure. In addition, Plaintiff acknowledged that he did not receive a response to the grievance, at some point he knew that his grievance had been "lost", and that he took no further action to follow up on it.[10] At the point when Plaintiff realized no response was forthcoming, he should have and could have refiled his grievance.[11] Plaintiff's failure to pursue a response to his grievance is significant because one of the purposes of the PLRA is to provide the facility a chance to resolve the alleged injury prior to Court involvement. *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). If the Court were to consider Plaintiff's Amended Complaint based on the mere submission

---

[10] Plaintiff testified that approximately one week after he submitted the June 2006 kite, he was transferred out of the Adams County Detention facility and back into the custody of the Colorado Department of Corrections. He testified that after the transfer, he did not attempt to follow up on the June 2006 kite or to secure a response with regard to it. Plaintiff's transfer to a different facility does not negate his need to grieve the restraint chair incident that allegedly occurred at the Adams County Detention Facility. *See Ruggiero v. County of Orange*, 467 F.3d 170, 173-77 (2d Cir. 2006) (noting that although inmate was confined in a different correctional facility, he was required to grieve the alleged injuries that occurred at his former facility prior to filing his federal lawsuit).

[11] The Court notes that the Adams County Detention Facility grievance policy does not contain a deadline for the submission of grievances [Docket No. 37-3 at 4].

12

of a grievance to which the facility never responded, the PLRA's purpose and mandatory nature would be "trivialized." *See Jernigan*, 304 F.3d at 1033. As such, even if Plaintiff filed the June 2006 kite and it was "lost" by the facility, there is no genuine issue of material fact regarding whether Plaintiff fully exhausted his administrative remedies, and summary judgment should be granted in favor of Defendants.[12]

IV. Conclusion

For the reasons stated above, the Court RECOMMENDS that summary judgment be granted in Defendants' favor and that Plaintiff's case be **dismissed without prejudice** for his failure to properly exhaust his administrative remedies pursuant to 28 U.S.C. § 1997e and Fed. R. Civ. P. 56.[13] IT IS FURTHER RECOMMENDED that Plaintiff's case

---

[12] In their reply to the Motion [Docket No. 49] and again at the evidentiary hearing, Defendants asserted an alternative argument relating to Plaintiff's failure to properly exhaust his administrative grievances. Defendants alleged that because the June 2006 kite does not assert a grievance specifically against Defendants Sedillo and Titus for the restraint chair incident, the Court should find that Plaintiff failed to properly exhaust his administrative remedies. *See* Reply at 6 [Docket No. 49]. Because the Court resolves the Motion on other grounds, it does not rely on this argument except to note that "nothing in the [PLRA] statute imposes a 'name all defendants' requirement." *Jones*, 127 S. Ct. at 922. Moreover, the Adams County Detention Facility's grievance policy does not contain a requirement that all those who caused the alleged injury need to be named in the grievance. *See id.* ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). As such, Plaintiff's failure to name Defendants Sedillo and Titus would not appear to be a bar to his claim were the Court to find that he had properly exhausted it.

[13] The Court recommends dismissal without prejudice. However, it notes that Plaintiff is likely procedurally barred from pursuing this case further because the alleged restraint chair incident occurred more than two years ago and any federal suit that Plaintiff may file regarding this incident should be barred by the applicable statute of limitations. *See* Colo. Rev. Stat. § 13-80-102(1)(g) ("All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and

13

against Defendant Poole should be **dismissed without prejudice** pursuant to Fed. R. Civ. P. 4(m).[14] Under Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.

A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or

---

"regardless of the theory upon which suit is brought . . . shall be commenced within two years . . . ."); *see also Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994) (finding that "§ 1983 claims are best characterized as personal injury actions and we therefore apply" the State of Colorado's two-year statute of limitations (citation omitted)). Although the filing of an administrative grievance may toll the statute of limitations until such time as a claim is exhausted, see *Roberts v. Barreras*, 484 F.3d 1236, 1238 (10th Cir. 2007), the Court finds that Plaintiff failed to create a genuine issue as to whether he filed a grievance. As such, the statute has not been tolled.

[14] Fed. R. Civ. P. 4(m) authorizes the Court to dismiss a party's case without prejudice for his failure to timely serve a summons and complaint unless the party can show good cause for his failure. In this case, Plaintiff failed to provide good cause for his failure to timely serve Defendant Poole. Although the court may extend the time for a plaintiff to serve a defendant even without a showing of good cause, *Espinoza v. United States*, 52 F.3d 838, 840-41 (10th Cir. 1995), the Court is not inclined to do so here, because the Court recommends that Plaintiff's case be dismissed for his failure to properly exhaust his administrative remedies. In addition, the case has been pending since November 20, 2006, Plaintiff was warned that his failure to provide good cause would likely result in a recommendation of dismissal, and Plaintiff was aware even before the Court's warning that Defendant Poole had not been served. *See Raeth v. Bank One*, 05-cv-02644-WDM-BNB, 2008 WL 410596, *3 at & n.4 (D. Colo. Feb. 13, 2008) (unpublished decision).

14

for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: February 26, 2008

BY THE COURT:

 s/ Kristen L. Mix          
U.S. Magistrate Judge
Kristen L. Mix